The Honorable, the Judges of the United States Court of Appeals from the Fourth Circuit. Mr. Marazzo? Yes, Your Honor. We're very pleased to hear from you, sir, and tell us first who you represent here, would you please? Yes, sir. May it please the Court, David Marazzo, on behalf of the appellants, U. S. Home and Lenar, whom the parties have collectively referred to as Lenar in the brief. I would like to address... I would like to address first, experts. Maryland law follows the American rule with respect to shifting. Parties are responsible to pay their own attorney fees and their own expert fees, regardless of outcome, unless a contract, statute, or rule expressly provides otherwise. In Maryland, courts must strictly construe a fee-shifting contract to avoid inferring duties the parties did not intend to create. The question presented on appeal is whether the purchase and unambiguously provides for expert fee shifting. The district court answered affirmatively, and we respectfully submit that decision is reversible error. Mr. Marazzo, the language in the contract is the prevailing party shall be entitled to recover cost fees and expenses, including actual and reasonable attorney's fees. What type of fees other than attorney's fees do you believe are included in the fee-shifting provision? None, Your Honor. Just attorney's fees. And I will address that directly, because I believe that was the district court's response. Your answer would mean that including language is surplus. Yes and no, Your Honor. Including clauses oftentimes are surpluses, but the inference that it does no work is equally plausible. It also applies under the district court's interpretation. Let me explain what I mean. If the first provision, the provision that says all fees, costs, and expenses included every type of fee… meaning including attorney's fees, that would do no work. That would be surplusage. And somebody might say, well, no, it doesn't do surplusage. It is being very clear to call out a particular type of fee, attorney's fees, so that there's no ambiguity, no lack of clarity that attorney's fees are one of the types of fees that are included. Well, if that type of clarification was necessary and appropriate for attorney's fees, it would be equally necessary and appropriate for expert fees given the American rule. And that's an important beginning foundational point under the language of the agreement. This agreement in the section that Your Honor's just quoted explicitly authorizes recovery of attorney's fees, as we all know. Equally undisputed is that the had the parties intended to provide for fee shifting of experts, they easily could have called out experts or consultant fees as they did with attorneys. We believe the omission from the prevailing party provision was intentional. And we know that from section 8 of the same agreement, which Your Honor, it appears at page 574 of the joint appendix. That provision is titled cost. And it states in relevant part, quote, except as otherwise provided in disagreement, each party shall be responsible for its own attorneys and other consultant fees and expenses. Thus, each party shall be responsible to pay its own attorneys and its own consultant unless the PSA provides otherwise. And both attorneys and consultants are called out by category. Section 18A does, excuse me, 18K, pardon me, does provide otherwise. But it only identifies the category of attorney fees. It says nothing about experts or consultants. Now, importantly, neither the district court nor ISTAR cites any case applying Maryland law where a prevailing litigant was reimbursed for expert fees, where the word experts or expert fees is not explicitly included in the fee shifting provision. We are aware of none. In contrast, we cited Berkley Trait at pages 14 and 15 of our brief. In that district of Maryland case, the operative agreement provided Plaintiff's landlord could recover, quote, from tenants all costs incurred by the landlord, including reasonable attorney fees and such costs. Though the agreement there provided for the recovery of all costs, including attorney fees, the court held it did not provide for the recovery of expert witness fees. And that was because the same inference that I just described earlier in response to your questions was equally plausible there. Although the expert fees expended by the plaintiffs may have been necessary and reasonable, the court noted, in the absence of explicit contractual mention of attorney fees, there was no legal basis upon which to award those fees. Is that your best case, you think? I do think that's I do think that's our best case with respect to the fee shifting of expert fees under a private contract. We do think there's a relevant Fourth Circuit case, but that deals with statutory fee shifting. And that case is called Wheeler 585 F. Second 618. And that case is cited and examined in the case that the district court relied on called Mid-Atlantic Toyota. In that case, that was a class action antitrust settlement where, as part of the settlement, plaintiff's counsel requested that a portion of the settlement fund be allocated to reimburse plaintiffs for their expert fees. And the question was whether the statute provided for reimbursement of expert fees, even though the statute only says attorney fees. And the district court in that case – now, we think that particular situation is an opposite here, as mentioned in the briefs, because it's dealing with statutory interpretation, not with a private contract. But to the extent it is an applicable analogy, in that case, the district court held that even though the statute did not provide for the word expert, this district court would. And on that point, the district court acknowledged the Wheeler case that I just cited, that, quote, outside non-legal consultants and experts are traditionally not regarded as attorney fees, however essential their services may be to the successful preparation and trial of a complex case, and therefore may not be recovered. The district court in Toyota, notwithstanding acknowledging this court's Wheeler decision, nevertheless departed from it, believing that an intervening Eighth Circuit case called Pachow reflected a trend in the law. We do not believe the district court had authority to depart from this court's decision in Wheeler, and it was not appealed. No inmate panel or other panel of this court has reversed or criticized Wheeler, and indeed, subsequent cases, including Davis v. Richmond, 803 F. 2nd 1322, reaffirmed the Wheeler holding that expert fees are not compensable under statute unless they explicitly provide for it. Mr. Morales? Yes, Your Honor. This is Judge Klee. Can you explain for me perhaps a little more detail what I would call your argument to bootstrap the definition of costs? I believe you mentioned it's defined in paragraph 18 to the relevant prevailing party provision at issue here. Yes, Your Honor. The two sections that I think are important to juxtapose are section 8, which is a titled cost. Sorry, I said 18. I apologize. Yes, Your Honor. No problem. And section 18K, which is the prevailing party provision. Under section 8, what you'll see is that titled cost, and in the middle of that provision with the sentence beginning except, it's 8, except as otherwise provided in this agreement. Each party shall be responsible for its own attorneys and other consultant fees and expenses. So what that does, in our view, under the PSA section 8, that is really just memorializing the American rule that the parties will pay for, will shoulder, will bear the cost of their own attorneys and their own consultants unless provided otherwise in the agreement. So does the agreement provide otherwise? We acknowledge that it does in section 18K. In 18K, it specifically states that attorney fees shall be reimbursable, but it does not say consultants. So in one section, they state the parties shall bear their own attorney fees and consultant fees, and in another section, it says that attorney fees shall be compensable, and it is silent with respect to experts and consultant fees. That juxtaposition, we believe, must be respected. Okay. I understood, but with respect to section 8 of the agreement, which at least in my copy of the appendix is on page 574 of the joint appendix, that does not reference litigation, correct? It does not reference litigation. It is not limited to litigation. It would be any attorneys or consultants. Okay. All right. Understood. Thank you very much. The district court also held that Lennar is required to pay the attorney's fee incurred for work performed on behalf of three companies, the seller companies who were litigants to the lawsuit below. We believe the district court erred here as well because the seller companies are not parties to an agreement with a fee-shifting provision. As an initial matter, undisputed, the seller companies submitted no motion for fees, filed no objection to the magistrate's report, filed no notice of appeal, and submitted no brief to this court. If the seller companies believed they had a contractual right to reimbursement of their fees, they had an obligation to file a motion to recover them. By failing to do so, the seller companies waived their claim to reimbursement. But as noted in the briefs and just now, the seller companies did not Stephen Fandler asked the court to award him the fees incurred for work performed on behalf of the seller companies. Fandler argues he is entitled to the seller company fees under the so-called guarantee agreement, which are located at pages 1431 and 1434 of the joint appendix. We submit that that argument is foreclosed and rejected by this court's June 2020 decision in Parkway 1046 versus U.S. Home Corp., which we brought to your Honor's attention via a notice of supplemental authority. Parkway concerned the same Maryland property and transaction that is at issue in this case. Parkway was a third-party beneficiary of one of the underlying contracts, successfully sued Lennar, and sought reimbursement of attorney fees. This court observed that although Parkway was a prevailing litigant, it was not a party to the underlying contract with the fee-shifting provision, and therefore had no right to reimbursement of its fees. The court acknowledged it was a very straightforward analysis, and we believe that straightforward analysis applies here. The selling companies are not parties to either guarantee agreement. But Mr. Fandler says not so fast. He says I am a party to the guarantee agreement. I prevailed in the litigation below, and I am the one seeking reimbursement of fees. In short, Mr. Fandler contends he should be able to recover indirectly what the seller companies cannot recover directly. According to Mr. Fandler, this court should disregard the fact that the seller companies have no contractual right to fees because he has a contractual right to fees. He agreed to front their legal bills, and their interests and his interests were aligned in the underlying suit. Mr. Fandler cites no case, and we know of no case in which the American rule was disregarded based on an alignment of interests among litigants. Mr. Fandler cites no case, and we know of no case in which a court awarded one litigant, like Mr. Fandler, the fees incurred on behalf of another litigant, the seller company, because their interests were aligned. If left undisturbed, we believe the district court's holding would represent a sweeping revision of the law. It would upset the settled expectations that parties bear their own contracts saying otherwise. And perhaps worse, we think the rule could be abused in future cases where, quote, aligned litigants could make interstate agreements between them about their legal fees that would unilaterally expand the obligations of the opposing parties, but not increase their rights. To be clear, Your Honor, Lennar does not argue that Mr. Fandler waived his contractual right to fees by hiring one law firm to represent him and the seller company. Our position is that Fandler is entitled to exactly what he negotiated in the guarantee agreement. No more and no less. And we submit that the language of those agreements entitles him to recover fees if three conditions are met. One, the work in the litigation is performed on Mr. Fandler's behalf. Second, the work is performed for claims brought under the guarantee. And third, he prevails. The third condition is not in dispute in this case. Conversely, Mr. Fandler is not entitled to recover fees for work performed on behalf of the seller companies or for work on balance of my time for rebuttal. Thank you. You can finish your sentence there. We don't stop you in the middle of the comment. Okay. Thank you very much, Your Honor. My sentence was it is undisputed that Mr. Fandler does indeed seek reimbursement for fees that do not meet one or both of these contractual requirements. Thank you very much, sir. Mr. Robley, are you next? Yes. Thank you, Your Honors. Good morning and may it please the court. Colin Raveley for Applebee's, Steven Fandler, Settler's Crossing, Washington Park Estates, and Bavard Development. I will be using 10 minutes of Applebee's time. Mr. Chapiga will use the remaining 10 minutes on behalf of Applebee ISTAR. During my argument, Your Honors, I will refer to Settler's Crossing, Washington Park Estates, and Bavard Development as Mr. Sandler's companies or the companies. Your Honors, this appeal arises out of a decade-long plus dispute that began when, as this court concluded three years ago, Lennar breached a real estate agreement with the companies in bad faith and then sued them and Mr. Sandler, who had guaranteed the company's obligations to Lennar. After years of litigation, this court affirmed a judgment in that lawsuit against Lennar and in favor of the companies Mr. Sandler and ISTAR. Mr. Sandler proceeded to seek attorney fees defending himself and his companies in that suit under a fee provision in the guarantee contracts that he had entered into with Lennar. The district court properly awarded Mr. Sandler those fees, Your Honor, based on its findings. One, that Mr. Sandler was a prevailing party in the lawsuit brought by Lennar. Two, that Lennar brought that lawsuit against Mr. Sandler under the guarantee contracts. And three, that the fees awarded, including any fees Mr. Sandler incurred defending his companies against Lennar's claims against them, were, in the words of the guarantee contracts fee provision, reasonable. Lennar does not dispute any of these findings in his opening brief on appeal. That is a waiver and it alone supports affirmance, Your Honors. The district court concluded that the fee provision... What do you say they weigh? Your Honors, they don't challenge the district court's interpretation of reasonable attorney fees in our view. That was the crux of the district. Does that apply to the amount of the fees for the companies or does that apply to some other attorney fees also? That applies to the entire award, Your Honor. That's the $15 million? No, no, no. Excuse me. That is the entire award to Mr. Sandler, not to Ozturk. All right. Your Honors, the district court interpreted that phrase... Are you involved in the expert witness dispute also? No, we are not. You're not? You don't have a dog that much? Okay. Correct. All right. You just saw Mr. Sandler's attorney's face. That's correct. Under the guarantee contracts, that's what I'm addressing right now, Your Honor. Very good. The crux of the district court's opinion, Your Honor, was its interpretation of reasonable attorney fees and its conclusion that the fees Mr. Sandler incurred defending his companies against Lennar's claims in the underlying lawsuit were included in that interpretation. That conclusion was based on the fact that if the companies were found liable in that lawsuit to Lennar, Mr. Sandler would have been liable as the company's guarantor, a fact Lennar does not dispute. Lennar cannot point to anywhere in its opening brief where it disputed the district court's interpretation of reasonable attorney fees or offered a counter-interpretation of that dispositive language. What Lennar does say that it did enough to avoid waiver simply by arguing that Mr. Sandler has no quote-unquote right to the company's fees is not responsive to the question of the meaning of reasonable attorney fees. Rather, it is circular. Mr. Sandler has a right to those fees precisely because they are reasonable. Lennar also claims that it challenged the district court's interpretation of reasonable when it argued that Mr. Sandler could only recover fees spent defending his companies in his own pleadings but not fees spent on his company's pleadings. That is not an argument challenging the meaning of reasonable attorney fees either. And on page 18 of its recovery of your honors, Lennar in fact concedes that Mr. Sandler quote needed to show unquote that his companies were not liable to Lennar. Because of Lennar's waiver, the court should affirm the award of Mr. Sandler on that basis alone. As for the merits, your honors, of the fee award to Mr. Sandler under the guarantees, we submit that this court's ruling follows from the plain language of the fee provision, the undisputed record, and Mr. Sandler's guarantee of his company's obligations. As noted, under the fee provision, a prevailing party in any litigation between Mr. Sandler and Lennar is entitled to quote reasonable attorney fees and costs of suit unquote. Mr. Walden, let me ask you this. If the sellers can recover independently, then do you believe the purchase agreement allows for duplicative recovery? Well, that's a different basis, an alternative basis for the award, your honor. And I assume what you mean is, are you referring to ISTAR? Yeah, well, do both sellers and ISTAR retain rights to attorney's fees? Your honor, first, let me say that that is an alternate basis for the fee award. We believe, as we have argued, that the guarantees provide an independent and sufficient basis for the entire award to Mr. Sandler and his companies. Ultimately, the district court also found that the companies retained their own rights to fees under the purchase agreement. And I believe what your honor is referring to is Lennar's argument that if that award under that contract just to the companies is upheld, that would somehow create duplicative rights to fees with ISTAR. Lennar made that assertion in its opening brief, your honors, but our position is it didn't develop the argument beyond a cursory assertion, which is not sufficient to raise the issue under this court's precedence. But addressing the merits of that issue, uh, there are, there would be rights on behalf of both the companies on the one hand and ISTAR on the other under the same agreement. But the district court found that that was acceptable based on the specific facts in the record here, your honors, that are undisputed and that Lennar avoided discussing in its opening brief, which is yet another waiver we would submit. Lennar disputes the district court's conclusion, but it never addresses the basis for the court's reasoning of its alternate award under the purchase agreement. And that was that although the companies defaulted on the ISTAR loan, which otherwise affected an assignment of their rights under the purchase agreement, because that default indisputably was caused by Lennar's bad faith breach, uh, employing Maryland contract principles and finding a fair and reasonable interpretation of the purchase agreement under those facts would allow the companies to recover fees on their own under that purchase agreement. We submit that that conclusion is correct, your honor. But again, we believe, uh, and we know that the district court, the district court's principle basis for the award to Mr. Sandler was under the guarantees. Your honors, I'd like to return to my discussion, uh, briefly of the guarantee contracts and why they support, uh, the award to Mr. Sandler. Uh, as I was saying, there is no dispute that Lennar sued Mr. Sandler under the guarantees or that Mr. Sandler is a prevailing party in that was tested below in the district court. And your honors, this can be found at joint appendix, page 402. Mr. Sandler did not seek any fees, not quote attributable to the claims against him on quote, including fees spent, for example, on his company's counterclaims against Lennar. To be clear, Mr. Sandler did not seek fees for spent on the counterclaims, nor did the district court award them. The only remaining question is whether fees awarded to Mr. Sandler incurred defending his companies were quote, reasonable attorney fees, unquote of the suit in which he and Lennar were parties as well. We submit the fees here were clearly reasonable. Lennar sued Mr. Sandler's companies to recover a $20 million deposit. Lennar, would it be okay if I finished my sentence, your honors? Absolutely. Absolutely. To recover a $20 million deposit Lennar made in connection with the underlying real estate transaction plus interest. Thank you, your honors. Thank you very much, Mr. Roblin. Mr. Chapika. Good morning, your honors. This is Jeffrey Chapika and I represent defendant Apley I-Star Inc. May I proceed? Yes. Good to have you here with us, Mr. Chapika. And we look forward to your argument. You proceed. Thank you. It's good to be with you. I'm going to be addressing the expert issue that Mr. Moroso started with this morning. Following a decade of litigation, I-Star sought fees and costs and expenses under the broad loser pays provision, section 18K of the parties purchase agreement. In a painstaking review, the district court awarded I-Star over $12 million in fees, costs and expenses under section 18K. Now, Lennar concedes that the vast majority of that was correct, but now appeals from $656,000 of that $12 million, claiming error in the award of expert witness fees and costs. Experts were essential to the trial below. It was a battle of experts. I-Star's expert fees and costs are clearly compensable under the broad loser pays provision at issue here. And I think it's important that we focus on the exact language of this agreement at section 18K because the other side, in several cases, talks about general presumptions, but the other cases construe other contracts and refer to language that isn't at issue here. Here, language that in the event of any litigation arising under or pursuant to this agreement, the prevailing party in such matter shall be entitled to recover from the non-prevailing party such party's costs, fees and expenses incurred in such litigation, including actual and reasonable attorney's fees and court costs. The district court properly found that this broad language encompassed the fees that I-Star had to go out of pocket to prepare non-expert evidence at trial. Lenar argues that because the word expert doesn't appear expressly in this provision, expert fees can't be awarded. But that's not a fair interpretation of Maryland law, and it's an implausible reading of the word of this contract, and each of those words must be given in plain meaning. Excuse me, I apologize for interrupting you, Mr. Trudeau, but the sound is pretty bad. Can you try maybe, I don't know, right near the speaker? Mr. Topeka? Hi, is this any better? Much better, yes, sir. I'm sorry to continue. No problem. Okay, I'm glad to hear that. I'm happy to start again, if that'd be helpful. You can pick up where you want to, but I'll tell you, don't be upset about that. We're dealing with a new world here, and you got a presiding judge that's not very well acquainted with all this new technology, so you take the time and go through what you need to do. I appreciate the court's indulgence. I was talking about the specific language at section 18k here, which is the operative provision, which says that prevailing parties must be entitled to recover costs and expenses incurred in such litigation. And Lennar's argument is that because it doesn't specifically mention the term expert, you can't imply the experts are covered. That's not a fair reading of Maryland law, and it's not a fair reading of this contract for the English language. I mean, Maryland law says that each word in the contract must be given a plain meaning, and as the court rightly noted, Lennar's interpretation of this contract would be the general term fees right out of the contract. It would be surpluses. This is a user-pays provision that reverses the American rule and entitles my client I've started to recover all of its costs, fees, and expenses. Now, Maryland law says that fee-shifting provisions are valid and enforceable, especially between sophisticated parties like the ones here. And in construing any contract, including a user-pays provision, courts must give effect to the plain meaning. And the question is, would a reasonable person understand the words of a contract to mean? Here, the reasonable person understands the words of the contract to entitle its fees and costs incurred in the litigation, and there's no carve-out for experts. Lennar's cited this case, Berkeley Tracing. I believe one of your honors asked if that was the best case, and Lennar's counsel suggests that's our best case. That case construed a very different provision, and I think if you look closely at the opinion in Berkeley Tracing, you see it's very different from the case now before the court. And I'd like to turn your honors attention to the key passage in Berkeley Tracing, and this is 2013 WL5718867 SR10. The court in Berkeley Tracing said, the lease between parties in this case states that the plaintiff may recover, quote, costs, but doesn't provide for the recovery of expert fees. Although the expert fees expanded by the plaintiff may have been necessary and reasonable, this court has no legal basis on which to award those fees. So the court there is construing a provision that awarded costs. It was not construing this provision that awarded fees, costs, and expenses. Lennar's counsel points out that we don't have a particular case on point, and that's because cases that involve provisions like this simply don't litigate it. The loser for these particular words in this contract came up with lots of cases where the loser has paid expert fees. The issue isn't even litigated because it's clear that where the contract provides for fees, expert fees are just included. And there are numerous cases like that. If you search the federal reporters, I would refer your honors to INRI RFP of the District of Minnesota. That's 399-F-SUB-3RD-827-2019 as just one example where a broad provision like this encompasses expert fees. Mr. Chapino, what, what, what, what, what, what, what, if any, can you tell us what INRI is planning to do for you? I think it's an important case to show that expert fees can be included as attorney's fees. Um, they can be included here. There are three provisions, right? We get fees, costs, and expenses. And I think expert fees could be understood as a part of all three of those. And Mid-Atlantic case is a case where attorney's fees was construed to include expert fees because they were essential and critical to the litigation of the case. And I think that's the case here, too, where our experts were so central to this defense that it's really a battle of the experts. Mr. Chapino, this is Judge Klee. Um, I had asked, uh, Mr. Moroso about, um, the appellant's argument that somehow Section 8 of the guarantee, or I'm sorry, Section 8, um, of the contracted issue limits Section 18. I wanted to give you a chance to, um, provide your thoughts on that. Yeah, I appreciate that, Your Honor. I think Your Honor's question, uh, toward the end, uh, Mr. Moroso is absolutely on point. That has nothing to do—Section 8 has nothing to do with litigation. It's the general provision about costs and attorney's fees. Uh, and indeed, you know what? Mr. Moroso kept talking about the heading that's called cost, even though the contract says that the headings are, uh, just for convenience and reference only. But in any event, Section 8 just talks about cost. It is not on point here. The on-point section of this contract is Section 18K, which is a carve-out that says, in the event of any litigation—and we're clearly, uh, in the world of Section 18K here—and 18K reverses the American rule, and 18K reverses whatever presumption Mr. Moroso would suggest there is from Section 8. And I think, uh, it—it's important that Lenore's own arguments, uh, betray its position here. Uh, you know, in the district court, when we talk fees and costs, there are lots of fees and costs that they didn't even object to, um, including e-discovery fees, or the fees and costs for court reporters, witness fees. These are all, um, fees that we sought and that, uh, the district court ordered the other side to pay. And I think it's important, because, you know, not all of these specific kinds of fees and costs are going to be included in the word contract. It's implausible to suggest that the parties have a burden to go in detail each kind of fee and cost that should be included, especially when the general nature of this provision is to reverse the American rule. Well, wouldn't it be much more detailed if it just said, and including the, uh, witness fee—expert witness fee? Well, Your Honor, the party— And you're hitting this whole thing off. Um, there should be no burden— And this is, this is a pretty close question. I mean, the magistrate judge ruled against you, and the district, uh, court, district judge, uh, reversed the magistrate judge, but she said the, uh, that the expert fees are essential to the litigation, were essential to the litigation, and they're, and they're included. Uh, my question is—I'm getting around to it—do we give any deference to the district court's on that point? Uh, Your Honor, I think, uh, the district court's view on that point is, is very important. Uh, most of the trial opinion just doesn't have that five-page opus here. It's devoted to going into the experts. Well, let me ask you this. Do we review her, her, her, her, her position that, that the, that they were included, uh, for abuse of discretion, or do we review it to no vote? Uh, the contrast interpretation is a no vote, Your Honor. The fact question— And they're no votes. They don't give any deference to it. And their answer is, we don't give her view of it any deference. Uh, that's right, Your Honor. The legal question of, um, what standards are under Maryland law, and under Maryland law, but giving full effect to each of the words of the contract, we believe it clearly provides what we actually see. So, Your Honor, um, I think the parties here contracted to a, a, a broad user-paced regime, includes cost fees and expenses. There's no sense to carve out particular kinds of fees or put an onus on the parties to imagine all the various types of fees and expenses that may incur hypothetical litigation ten years down the road when they're contracted. Here, they just agreed to the cost fees and expenses, and to put the burden on the non-prevailing party. ISTAR has out-of-pocket to pay $656,000 to defend itself at trial. ISTAR, under the express terms of Section 18K, is not the party that has to bear those net. Uh, the district court got this issue right, and this decision should be affirmed. Uh, and— Thank you very much, sir. Yes, sir. Thank you, Your Honor. I think I heard the bell go off. Uh, we appreciate your views on the matter. Uh, Mr. Marazzo, did you reserve some rebuttal time? I did, Your Honor. Five minutes. Very good. Thank you, Your Honor. I'll start with expert fees again. I want to be clear that, uh, we do not contend that the district court's interpretation of this agreement is implausible, implausible, or impossible. The district court's interpretation that the including clause is merely illustrative of the type of fee that might be shifted is a reasonable interpretation, as the district court found. But it is not the only reasonable interpretation, as the magistrate judge found. The other plausible interpretation is that the including clause is limiting. It is a clause that limits the type of fee that is recoverable. And because the clause, because the provision is subject to two reasonable, plausible interpretations, it is not sufficiently explicit to reverse the American rule. That is the point that we're making. When a provision is subject to two interpretations, it's not sufficiently clear, and Your Honor asked a very important question about deference. This is a contract interpretation, and the district court's determination is not entitled to deference. I do want to address quickly the idea that expert fees are routinely awarded, and that this is not an issue that is litigated. There are cases under Maryland law where expert fees are awarded. But in each of those instances, the contract language at issue explicitly included expert fees. Beck versus Sullivan, 2013 Westlaw 5531389. The contract says that the prevailing party is entitled to the cost of suit and any appeal, including reasonable attorney fees, expert fees, and court costs. Peterson versus Springdale, 2018 Westlaw 4502286. Same result. The prevailing party in any action shall be entitled to reimbursement of their litigation costs and expenses, including attorney fees, expert fees, and court costs. That's what this agreement lacks, and it's why the decision should be reversed. As to the question about mid-Atlantic Toyota that Your Honor asked, we believe that case is not good law, that we know is good law, as affirmed by Davis and subsequent cases. On the Sandler fees issue, Your Honors, we do not believe we waived anything. The entire premise of our objection of the magistrate's report and of this appeal is the issue of whether Mr. Sandler is entitled to recover the fees incurred on behalf of his company and on claims that were not the subject of the guarantee agreement. It's an issue of entitlement, not necessarily reasonableness. And in any event, it would be inherently unreasonable and contrary to law for a court to award any fee that is not covered by a fee-shifting provision. Now, Mr. Radley said that Mr. Sandler does not seek any reimbursement for fees incurred on behalf of the seller companies or for claims that were not the subject of the guarantee agreement. We just think there's a factual dispute about this. The record is ECF 804-3. We cited this to the district court. There are literally dozens and dozens of entries that concern, for example, the counterclaim that the seller companies filed affirmatively against our client, Lenar. Mr. Sandler was not a party to those counterclaims, and those counterclaims were brought pursuant to the purchase and sale agreement, not the guarantee agreement. Likewise, there are dozens and dozens of entries, thousands of dollars in dispute concerning the fraud claims that Lenar brought against the seller companies. Those claims were not brought against Mr. Sandler, and those claims were not brought pursuant to the guarantee agreement. And finally, with respect to the purchase and sale agreement and whether the seller companies had an independent and direct right to recover fees pursuant to that separate contract, the answer is definitively no. The seller companies did not file a motion for fees, much less a motion for fees pursuant to the purchase and sale agreement. ISTAR did. The district court's interpretation that Mr. Bradley described, that because Lenar breached first, it somehow divided and duplicated the rights under the agreement, we believe is irreconcilable with the language of the agreement. This is at the joint appendix, pages 1123 through 27, which lists 21 separate events of default. One of those is Lenar's breach. In that particular conduct would not be considered an event of default, but there are 20 other events of default. And section 9.1 of the agreement says that an event of default shall be defined as, quote, one or more of the aforementioned events. Here, as ISTAR's own brief states, the fact that Lenar may have breached first does not mean there was not a separate event of default when the seller companies did not pay the loan. And this court, in its prior opinion, and the district court in multiple times found that there was an event of default in which ISTAR stepped into the shoes of the seller companies with respect to the purchase and sale agreement, which includes the right to recover attorney's fees. Thank you, Mr. Randolph. I'm sorry, I didn't hear you, Your Honor. I think I heard your bell. Maybe I didn't hear it right. Oh, you did. I said thank you, Your Honor. Yes, sir. Thank you very much. We appreciate the argument and that of all the fine lawyers. And we'll take the case under advisement. And that concludes this argument, Madam Clerk. The court will take a brief break before hearing the next case.
judges: Robert B. King, Henry F. Floyd, Thomas S. Kleeh